UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEIL EMERY,

                    Petitioner,             Case No. 21-cv-12673

v.                                   HON. MARK A. GOLDSMITH

MATT MACAULEY,

                    Respondent.

_____/

**OPINION AND ORDER (i) DENYING THE AMENDED PETITION FOR A WRIT OF HABEAS CORPUS, (ii) DENYING A CERTIFICATE OF APPEALABILITY, AND (iii) DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Neil Douglas Emery (Petitioner) was convicted on one count of delivering methamphetamine, Mich. Comp. Laws § 333.7401(2)(b)(i), following a jury trial in the Roscommon County Circuit Court and was sentenced for a second or subsequent drug offense, Mich. Comp. Laws § 333.7413(1), to 12 to 40 years in prison in 2019. In his petition, as amended, he raises claims concerning the admission of a lab report and his confrontation rights, the admission of alleged hearsay, the effectiveness of defense counsel for failing to object to alleged trial and sentencing errors, and the validity of his sentence. Am. Pet. (Dkt. 8).

For the reasons set forth, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and denies his amended petition. The Court also concludes that a certificate of appealability and leave to proceed in forma pauperis on appeal are denied.

# I.   BACKGROUND

Petitioner's conviction arises from a controlled drug buy in Roscommon County, Michigan in 2018.  The Michigan Court of Appeals briefly described the facts, which are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> In 2018, a confidential informant (CI) informed officers working with the Strike Team Investigative Narcotics Group (STING) that he could set up a controlled purchase of methamphetamine ("meth") from defendant. On April 13, 2018, the officers provided the CI with controlled "buy money" and attached a device to the CI's chest that would record audio and transmit to nearby officers. The CI's car and person were also searched for any other drugs or money before the operation. Six STING surveillance vehicles observed the transaction, which, unusually, took nearly three hours. After driving to several locations, defendant eventually got into a different car for a few minutes.1 The CI testified that defendant returned to his car with meth, took a small portion from the package as a "quid pro quo" for setting up the deal, then put it in the center console. After dropping defendant off, STING officers searched the CI's car and recovered the drugs. The drugs were field-tested and found to be positive for meth. The drugs were then sent to the Michigan State Crime Lab, which confirmed that the drugs were positive for meth. Defendant was arrested several weeks later and was convicted of delivery of meth.
>
> At sentencing, the court outlined that the minimum guidelines range was 72 to 120 months without the statutory enhancement for a subsequent drug offense and 144 to 240 months with the enhancement. The trial court sentenced defendant to serve 144 months to 40 years' imprisonment, commenting that defendant had 13 prior felonies, 18 prior misdemeanors, a juvenile record, and had been on bond for a different drug offense when he was convicted of this offense. We granted in part defendant's request to remand, and on remand, the trial court clarified that although it had not expressly stated its awareness that the sentence enhancement was discretionary, it had invoked that discretion on the basis of defendant's extensive prior criminal record and the fact that defendant had been out on bond for another meth charge during the crime.

People v. Emery, No. 348127, 2020 WL 7413590, *1 (Mich. Ct. App. Dec. 17, 2020).

The Court also adopts the detailed summary of the trial testimony set forth by defense counsel on direct appeal, to the extent that those facts are consistent with the record.  Those facts are as follows:

- STING Officer Testimony

On April 13, 2018, Deputy Allan Kory was working as an undercover narcotics officer with "STING." (T 92). STING is a multi-jurisdictional unit from several counties that investigate drug crimes. (T 92). While working with STING, Deputy Kory testified he conducted undercover narcotics purchase and surveillance and also used informants. (T 92).

Deputy Kory explained the officers would meet informants and search them and their vehicle. (T 92). According to Deputy Kory, these searches were designed to ensure the informants did not have any narcotics or money on them. (T 92). He further testified they would set these individuals up with transmitting recorders. (T 92).

Deputy Kory testified he became involved in an attempt to purchase narcotics from Neil Emery because he "had several tips that they were selling narcotics from several people, and then [he] had one CI that said that he could actually purchase methamphetamine from him." (T 93-94). Deputy Kory testified the "CI" who gave him this information was Christopher Kane ("Kane"). (T 94). Deputy Kory testified Kane became involved with STING because he was arrested for possessing "illegal narcotics" after a traffic stop and STING asked the prosecutor's office not to submit the case to the prosecution. (T 95). Deputy Kory then spoke with him and asked Kane to be an informant. (T 95-96). Kane agreed. (T 96).

Deputy Kory then testified Kane informed him he could purchase methamphetamine from Mr. Emery. (T 96). Deputy Kory explained Kane he would first have to purchase marijuana from Mr. Emery and then later he could purchase methamphetamine from him. (T 96).

On the day of the controlled buy, Deputy Kory testified he was contacted by Kane who "advised [him] that he could set up a deal with Neil to purchase methamphetamine." (T 96). Deputy Kory then assembled a team of STING officers and told Kane to set up the deal with Mr. Emery. (T 96). Deputy Kory and the STING officers then met Kane at a predetermined location to search him and his vehicle prior to the deal and to set him up with a recording device and transmitter. (T 97). Deputy Kory claimed nothing of note was found in the search. (T 97). Once the search was completed, Deputy Kory testified the STING officers gathered and began surveilling Kane. (T 98).

The officers then followed Kane from a house where Mr. Emery was picked up at to a Shell gas station in Houghton Lake where he stayed for about 10 to 15 minutes. (T 99). Deputy Kory explained the controlled buy in this case was not "a typical deal." (T 99). According to Deputy Kory, "a typical deal is you go to one location, the drugs get picked up, and then the informant or the suspect gets dropped off." (T 99). Deputy Kory testified this deal was different because there was a lot of

movement and he believed "there was some miscommunication between the person they were gonna get narcotics from and Mr. Emery; so they kept moving locations." (T 100). He further explained that he believed "that the suspect beyond Mr. Emery was giving them directions on where to go, to different meet locations." (T 100).

After making a few other stops, Deputy Kory testified they went back to the Shell station where he observed Mr. Emery getting into a Pontiac Grand Am and then into Kane's vehicle. (T 102). The two then drove back to the home where Mr. Emery was picked up. (T 102).

Once this process was completed, Deputy Kory testified the STING officers followed Kane to the initial meet location where the officers recovered narcotics in the center console of the vehicle. (T 103). The suspect methamphetamine was then sent to the State Police Crime Laboratory for testing. (T 105). Deputy Kory testified that the narcotics they recovered tested positive for methamphetamine. (T 106). The individual who performed the test, Karen Brooks, was not called as a witness. (T 106).

Deputy Kory testified it was impossible for Kane to get the methamphetamine from anyone other than Mr. Emery that day, but later clarified it "could be possible" his team could have lost sight of Kane for a period of time. (T 106, 122). Mr. Emery was arrested weeks later. (T 112).

Deputy Kory testified that even though he believed the methamphetamine was obtained from the individuals in the Grand Am, no attempt was made to stop the vehicle. (T 115). He further testified that the vehicle was sold at some point after the controlled buy. (T 115). Deputy Kory also believed the "buy money" was probably exchanged in the vehicle and, as a result, was never recovered. (T 116).

Detective Sergeant William Priest also testified about his involvement in the STING operation. (T 123). Among other things, Sergeant Priest searched the vehicle before and after the controlled buy. (T 131). He testified that the alleged methamphetamine in the car was not in the car before the buy. (T 131).

Sergeant Priest also provided the buy money to Kane. (T 134). He testified that he provided $100 to them and only $60 was used. (T 134). He obtained $40 from Kane after the buy. (T 134). In addition, to Sergeant Priest and Deputy Kory, Detective Lieutenant Mark Pintar, and Troopers Anthony Montie, and Kyle Kehn testified about their involvement in the controlled buy.

• Confidential Informant Testimony

Christopher John Barrett Kane, the confidential informant, also testified. (T 172). Kane testified he met Mr. Emery while he was driving for a medical taxi and the two became friends for a couple years. (T 172).

In 2018, Kane was pulled over by the police for marijuana possession. (T 172-173). After the stop, he spoke with officers from STING and came to agreement to do a controlled purchase for methamphetamine for them. (T 173). Kane fulfilled that agreement on April 13, 2018, when he agreed to set up a controlled buy involving Mr. Emery. (T 173).

Kane testified he met with STING officers that day. (T 174). Once with the officers, the officers searched Kane and his car. (T 174). The officers also placed an "audio transmitter" on his chest. (T 174).

Kane then testified he went to purchase methamphetamine. (T 175). Kane picked up Mr. Emery and his girlfriend from a house and then began driving to a gas station "to do the deal." (T 175) He further claimed Mr. Emery used the money the STING officers gave him to purchase methamphetamine at the gas station. (T 177).

According to Kane, Mr. Emery later gave him the drugs. (T 177). Kane claimed Mr. Emery took some of the methamphetamine as consideration for setting up the deal for him. (T 178).

After dropping off Mr. Emery and his girlfriend, Kane met with STING officers again. (T 179). He testified he was under surveillance for the entire time he was involved in the deal. (T 179).

Def. Appeal Br. at PageID.615–619 (Dkt. 16-10).

Following his conviction and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the same claims presented in his amended habeas petition. The court denied relief on those claims and affirmed his conviction and sentence. Emery, 2020 WL 7413590 at *1–5. Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which denied leave to appeal in a standard order. People v. Emery, 959 N.W.2d 504 (Mich. 2021).

Petitioner thereafter filed an initial federal habeas petition containing five claims for review, Pet. (Dkt. 1), which the Court dismissed without prejudice on exhaustion grounds. 4/6/22 Op. and Ord. Dismiss (Dkt. 6); J. (Dkt. 7). Petitioner then submitted an amended habeas petition seeking to proceed only on his four fully exhausted claims, and the Court reopened the case for

further consideration.  See Am. Pet.; see 5/27/22 Ord. Reopen  (Dkt. 9).  Petitioner raises the

following claims in his amended petition:

> I.     Confrontation Clause. A Sixth and Fourteenth Amendment violation. The
>        court allowed forensic lab results in as evidence and the person who created
>        the lab results was not there to testify.
>
> II.    The hearsay statements by the officers and the confidential informant
>        resulted in a Sixth Amendment violation.
>
> III.   Ineffective assistance of counsel when petitioner's attorney did not object
>        to the admission of inadmissible evidence or to the hearsay statements that
>        contaminated the decisions of the jurors.
>
> IV.    A Sixth and Fourteenth Amendment violation occurred when the judge
>        appeared to believe that the sentencing enhancement was mandatory rather
>        than discretionary.

Am. Pet.  Respondent filed an answer to the amended petition contending that it should be denied

because the claims lack merit.  Resp. (Dkt. 15).  Petitioner filed a reply to that answer. Reply (Dkt.

19).

## II.     LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28

U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when

considering habeas petitions brought by prisoners challenging their state court convictions.  The

AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> >     application of, clearly established Federal law, as determined by the
> >     Supreme Court of the United States; or

6

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405–06 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002). "The 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also Bell, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520–21 (citations omitted); see also Williams, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh, 521 U.S. at 333, n. 7); Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  Id.  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id.; see also White v. Woodall, 572 U.S. 415, 419–20 (2014).  Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  Woods v. Donald, 575 U.S. 312, 316 (2015).  A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.  Woods v. Etherton, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting Wright v. Van Patten, 552 U.S. 120, 125-126 (2008) (per curiam)); Lockyer

v. Andrade, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington, 562 U.S. at 100.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002); see also Mitchell, 540 U.S. at 16.

The requirements of clearly established law are determined solely by Supreme Court precedent.  Thus, circuit precedent does not constitute clearly established Supreme Court law and cannot provide the basis for federal habeas relief.  Parker v. Matthews, 567 U.S. 37, 48–49 (2012) (per curiam); see also Lopez v. Smith, 574 U.S. 1, 2 (2014) (per curiam).  The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's ruling.  Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review.  See 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III.    ANALYSIS

#### A.    Admission of Lab Testing Results

Petitioner first asserts that he is entitled to habeas relief because the trial court violated his confrontation rights by admitting testimony about forensic lab testing results through a police

officer and not the person who conducted the testing/prepared the report.  Respondent contends

that this claim is waived and that it lacks merit.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief.

The court explained in relevant part:

> Defendant argues that the trial court erred by … permitting the admission of the
> Michigan State Crime Lab report through an officer who had not performed the
> testing or authored the report…. We agree that defendant's confrontation clause
> rights were violated, but we are unpersuaded that the report's admission affected
> the outcome of the proceedings.
>
> ***
>
> Defendant next argues that the circuit court denied his rights under the
> Confrontation Clause by admitting evidence of a lab report through the testimony
> of one of the STING officers. We disagree. The prosecutor provided proper notice
> to defendant of the prosecution's intention to use the report at trial pursuant to MCR
> 6.202(C)(1), and defendant made no written objection to the report pursuant to
> MCR 6.202(C)(2). Thus, the report was "admissible in evidence to the same effect
> as if the person who performed the analysis or examination had personally
> testified." MCR 6.202(C)(1).
>
> We additionally observe that even if admission of the report had been erroneous,
> which it was not, defendant suffered no prejudice as a result. Prejudice means that
> an "error affected the outcome of the lower court proceedings." *People v. Carines*,
> 460 Mich. 750, 763; 597 N.W.2d 130 (1999). Defendant cannot have been surprised
> by the report, having been provided with a copy of the report and notice that it
> would be used more than two months before trial. Furthermore, the testifying
> officer had already explained that he field-tested the substance delivered to the CI
> and found it positive for meth. Thus, the jury was already aware that the substance
> had been tested and found to be meth. Furthermore, the theory of the defense was,
> as noted, that the operation had been inept and the "true drug dealers" had been in
> the other car. Defendant never seriously challenged the physical nature of the
> recovered substance, nor would doing so seem relevant to the theory of the defense.
> Therefore, even if the lab report was not properly admitted, it did not affect the
> outcome of trial or affect defendant's substantial rights.

Emery, 2020 WL 7413590 at *1–3 (text on subsequent hearsay claim omitted).

The state court's denial of relief, while not a model of clarity and seemingly internally

inconsistent, is neither contrary to Supreme Court precedent nor an unreasonable application of

federal law or the facts.  As an initial matter, the Court agrees with Respondent that Petitioner's

trial counsel waived this claim by not submitting a written objection to the report after receiving

notice from the prosecution before trial and by expressly stating that he had no objection to the

admission of the lab report during the police officer's testimony at trial.  See 12/6/18 Trial Tr

PageID.166 (Dkt. 15).

Waiver is the "'intentional relinquishment of a known right.'"  United States v. Olano,

507 U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).  A criminal

defendant who waives rights "may not then seek appellate review of claimed deprivation of those

rights, for his waiver has extinguished any error."  United States v. Griffin, 84 F.3d 912, 924 (7th

Cir. 1996) (citing Olano, 507 U.S. at 733-34); see also Shahideh v. McKee, 488 F. App'x 963, 965

(6th Cir. 2012) ("waiver is a recognized, independent and adequate state law ground for refusing

to review alleged trial errors").  The right to confrontation may be waived.  Melendez-Diaz v.

Massachusetts, 557 U.S. 305, 314, n. 3 (2009).  Because defense counsel did not object in writing

before trial and stated that he had no objection to the admission of the lab report during trial,

Petitioner waived review of this claim.  See McCoy v. Louisiana, 584 U.S. 414, 422 (2018) (stating

that while "[s]ome decisions ... are reserved for the client—notably, whether to plead guilty, waive

the right to a jury trial, testify in one's own behalf, and forgo an appeal," trial management "is the

lawyer's province … including what arguments to purse, what evidentiary objections to raise, and

what agreements to conclude regarding the admission of evidence"); Gonzalez v. United States,

553 U.S. 242, 256 (2008) (Scalia, J., concurring) ("I doubt many think that the Sixth Amendment

right to confront witnesses cannot be waived by counsel." (citing Diaz v. United States, 223 U.S.

442, 444, 452–453 (1912))); New York v. Hill, 528 U.S. 110, 115 (2000) ("absent a demonstration

11

of ineffectiveness, counsel's word on such matters is the last"); see also Smith v. Cook, 956 F.3d

377, 390 (6th Cir. 2020) (discussing cases); United States v. Chun Ya Cheung, 350 F. App'x 19,

21–22 (6th Cir. 2009).

What Respondent fails to address and what is less than clear from the Michigan Court of

Appeals' decision is whether the court actually relied upon "waiver" as a basis for rejecting

Petitioner's confrontation claim.  While the court discussed Petitioner's failure to object to the lab

report in writing, it did not clearly state that Petitioner waived the issue or reference the fact that

defense counsel stated that he had no objection to the admission of the lab report at trial.  Rather,

the court went on to rule that even if a confrontation error occurred, such error was harmless.  This

Court does the same.

On direct review of a conviction, a constitutional error is considered harmless if the

reviewing court finds it was harmless beyond a reasonable doubt.  Chapman v. California, 386

U.S. 18, 24 (1967).  In Brecht v. Abrahamson, the Supreme Court ruled that for purposes of federal

habeas review, a constitutional error that implicates trial procedures is considered harmless if it

did not have a "substantial and injurious effect or influence in determining the jury's verdict."  507

U.S. 619, 637 (1993); see also Fry v. Pliler, 551 U.S. 112, 117-118 (2007) (confirming that the

Brecht standard applies in "virtually all" habeas cases).  More recently, the Supreme Court has

clarified that for a habeas petitioner to obtain relief on an error that a state appellate court has

determined to be harmless, the petitioner must not only satisfy the Brecht standard and show that

the error had a substantial and injurious effect or influence on the verdict, he or she must also show

that the state court's determination that the error was harmless beyond a reasonable doubt was an

unreasonable application of Chapman.  See Brown v. Davenport, 596 U.S. 118, 127, 133–36

12

(2022). "When a state court has applied <u>Chapman</u>, § 2254(d)(1) requires a habeas petitioner to prove that the state court's decision was unreasonable." <u>Id</u>. at 135.  Confrontation errors are subject to harmless error review.  <u>See</u> <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 681–82 (1986); <u>Reiner v. Woods</u>, 955 F.3d 549, 555 (6th Cir. 2020).

In this case, Deputy Allan Kory testified that he conducted a field test of the substance recovered during the controlled buy and the substance tested positive for methamphetamine. 12/6/18 Trial Tr. PageID.360 (Dkt. 16-7).  Moreover, whether the substance recovered during the controlled buy was methamphetamine was not in dispute at trial.  Rather, the defense strategy was to challenge the credibility of the confidential informant, question the motivation and competency of the police investigation, highlight the fact that the police did not stop the other car at the scene, and cast doubt on Petitioner's role in the drug transaction.  Given the field test results and given that the defense did not contest the drug content of the recovered substance, any confrontation error in admitting the lab report was harmless.  Petitioner fails to show that the alleged error had a substantial and injurious effect or influence on the verdict and fails to show that the Michigan Court of Appeals' determination that the error was harmless was unreasonable.  Habeas relief is not warranted on this claim.

### B.   Admission of Alleged Hearsay

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting alleged hearsay evidence, e.g., tips to police and a confidential informant's statements, from a police officer.  Respondent contends that this claim is not cognizable and that it lacks merit.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

Defendant argues that the trial court erred by permitting the admission of alleged hearsay evidence from one of the STING officers …. we disagree that the challenged testimony was hearsay.

Whether evidence constitutes hearsay is a question of law that we review de novo. See People v. McDaniel, 469 Mich. 409, 412-413; 670 N.W.2d 659 (2003). "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay evidence is inadmissible unless there is an exception. MRE 802. Defendant argues that the trial court admitted three statements by a STING officer that were inadmissible hearsay.

One of the statements was an officer's statement that the CI initially stated he could purchase marijuana from defendant and then later stated that he could purchase meth. Although the trial court sustained defendant's prompt objection, it did not immediately tell the jury that it could not consider that statement. During its instructions to the jury, it properly told the jury not to consider any evidence it had excluded or stricken, but then proceeded to opine that "[a]ctually, in this case, I don't think anything was strucken [sic]." Ordinarily, "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v. Abraham*, 256 Mich. App. 265, 279; 662 N.W.2d 836 (2003). However, the trial court's inappropriate and inaccurate commentary undermines that presumption in this matter, so we will treat all three statements as having been admitted.

Summarized, the three statements were that: (1) officers had received tips that defendant was selling narcotics and that the CI could purchase meth from defendant; (2) the CI initially stated that he could purchase marijuana from defendant and then that he could purchase meth; and (3) that the informant contacted the officer and stated that he could purchase meth from defendant. In other words, all three statements generally were to the same effect. Critically, they were all made in the context of explaining the background to why and how the officers decided to set up the controlled purchase. Considering the statements in the context of the prosecutor's questions, they were clearly not offered to prove that defendant was selling narcotics. Rather, they were offered to explain why the officers attempted to make a controlled buy from defendant. We have held that "a statement offered to show why police officers acted as they did is not hearsay." People v. Chambers, 277 Mich. App. 1, 11; 742 N.W.2d 610 (2007). Therefore, the officer's statements were not hearsay.

Furthermore, the theory of the defense was largely that the entire police operation had been haphazard, incompetent, and confused; and the "true drug dealers" had been in the other car that the officers never intercepted. Defense counsel expressly conceded during opening argument that the jury would hear evidence that defendant had been specifically targeted and had been essentially set up by the CI purely for

14

the sake of getting out of his own drug charges. Therefore, even if the above statements had been improperly admitted, it does not appear that they would have negatively affected the defense. Indeed, the fact that the CI "upped the ante" from marijuana to meth could have bolstered the implied defense theory that the operation was an inept setup. If there was any error in the admission of the statements, it was harmless. See Gursky, 486 Mich. at 619–25.

Emery, 2020 WL 7413590 at *1–2 (text about foregoing confrontation issue and footnote omitted).

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Serra v. Michigan Dep't of Corr., 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004) (quoting McGuire, 502 U.S. at 69-70); see also Wynne v. Renico, 606 F.3d 867, 871 (6th Cir. 2010) (citing Bey v. Bagley, 500 F.3d 514, 519-520 (6th Cir. 2007)); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).

First, to the extent that Petitioner challenges the state court's ruling under Michigan law, he fails to state a cognizable habeas claim. State courts are the final arbiters of state law and federal courts will not intervene in such matters. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); Sanford v. Yukins,

288 F.3d 855, 860 (6th Cir. 2002).  Habeas relief does not lie for perceived errors of state law.  Estelle, 502 U.S. at 67–68.

Second, Petitioner fails to establish that the admission of the testimony violated his due process or confrontation rights, or rendered his trial fundamentally unfair.  The police officer's testimony regarding the tips to the police and the confidential informant's statements was not offered to prove the truth of the matter asserted, but rather was offered to explain the police investigation into Petitioner and why the police chose to target him for a controlled drug buy.  Consequently, such statements were not hearsay and their admission did not violate due process.  Moreover, the admission of testimonial statements that are not offered for the truth of the matter asserted does not violate the Confrontation Clause.  See Smith v. Arizona, 602 U.S. 779, 779 (2024); United States v. Davis, 577 F.3d 660, 670 (6th Cir. 2009); see also Moore v. Burt, No. 17-1868, 2017 WL 7048508, *3 (6th Cir. Dec. 27, 2017) (citing Davis and denying a certificate of appealability).  Petitioner thus fails to show that the admission of the disputed testimony was improper, let alone fundamentally unfair.  Habeas relief is not warranted on this claim.

### C.    Sentencing

Petitioner also asserts that he is entitled to habeas relief because the trial court appeared to believe that his sentencing enhancement was mandatory rather than discretionary.  Respondent contends that this claim is not cognizable and that it lacks merit.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief.  The court explained in relevant part:

> This Court has held that resentencing is required where the trial court "mistakenly believed enhancement was mandatory, not discretionary." People v. Green, 205 Mich. App. 342, 347; 517 N.W.2d 782 (1994). MCL 333.7413(1) provides that an individual convicted of a second or subsequent drug offense may be imprisoned for

a term that is twice the authorized ordinary term. At trial, the prosecutor introduced evidence of defendant's previous drug conviction and elected to charge defendant as a second drug offender under MCL 333.7413(1). On appeal, defendant filed a motion to remand this case to develop a factual record. We granted the motion in part for the sole purpose of allowing the court to explain its reason for enhancing defendant's sentence pursuant to MCL 333.7413. On remand, the trial court clarified that it had always understood that the enhancement was discretionary, and it had used its discretion to sentence defendant with the enhancement because of defendant's extensive criminal history and pattern of reoffending in the same manner.

Defendant argues that the record contradicts the trial court's assertion, instead showing that the trial court mistakenly believed that the sentence enhancement was mandatory. Defendant notes that the PSIR mistakenly stated that enhancement was mandatory and defense counsel did not request a sentence without the enhancement. However, neither of these circumstances reflects whether the trial court itself believed the sentence was discretionary. Defendant also argues that the trial court acknowledged that the guidelines range with the enhancement was "very severe." However, this also does not indicate that the trial court believed that the sentence enhancement was mandatory, particularly because the trial court outlined what the guidelines were both with and without the enhancement. Based on the trial court's own clarification, it is clear that the trial court did not mistakenly believe that the sentence enhancement was mandatory. In the absence of an evidentiary basis for doing so, we decline to second-guess the trial court's own recollection.

Defendant also argues that the trial court did not explain its reasoning for applying the enhancement at sentencing and therefore abused its discretion by applying the enhancement. However, MCL 333.7413(1) provides that the court "may" enhance a defendant's sentence for a subsequent drug offense and does not require that the court provide compelling reasons for the enhancement. Further, we have held that a discretionary sentence enhancement provided by statute is itself part of the statutory guidelines range and not a departure, so there is no need for a trial court to provide specific justification for imposing a sentence with such an enhancement. See People v. Williams, 268 Mich. App. 416, 430; 707 N.W.2d 624 (2005). Regardless, the trial court clearly stated on remand that it had adopted the enhancement because of defendant's prior record, tendency to reoffend in the same manner, and refusal to accept responsibility for his actions. Therefore, the trial court did not abuse its discretion by applying the enhancement to defendant's sentence.

Emery, 2020 WL 7413590 at *3–4.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  A sentence imposed within the statutory

17

limits is generally not subject to federal habeas review.  Townsend v. Burke, 334 U.S. 736, 741

(1948); Cook v. Stegall, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999); see also Hutto v. Davis, 454

U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years

that falls within the limits prescribed by the state legislature).  Claims which arise out of a state

trial court's sentencing decision are not normally cognizable upon habeas review unless the

petitioner can show that the sentence imposed exceeded the statutory limits or is wholly

unauthorized by law.  Lucey v. Lavigne, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  Petitioner's

sentence is within the statutory maximum for a second drug offender.  See Mich. Comp. Laws §§

333.7401(1)(b)(1); 333.7413(1).  Consequently, his sentence is insulated from habeas review

absent a federal constitutional violation.

A sentence may violate federal due process if it is carelessly or deliberately pronounced

on an extensive and materially false foundation which the defendant had no opportunity to correct.

Townsend, 334 U.S. at 741; see also United States v. Tucker, 404 U.S. 443, 447 (1972) (citing

Townsend); United States v. Sammons, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have

a meaningful opportunity to rebut contested sentencing information).  To prevail on such a claim,

a petitioner must show that the court relied upon the allegedly false information.  United States

v. Polselli, 747 F.2d 356, 358 (6th Cir. 1984); Draughn v Jabe, 803 F. Supp. 70, 81 (E.D. Mich.

1992).

Petitioner makes no such showing.  He had a sentencing hearing and a remand before the

state trial court with an opportunity to contest the sentencing decision.  Petitioner fails to establish

that the state court relied upon materially false or inaccurate information in imposing his sentence

which he had no opportunity to correct.  To be sure, on remand, the trial court clarified that it

knew the sentencing enhancement was discretionary and provided reasons for imposing the enhanced sentence.  The trial court did not abuse its discretion – and Petitioner was afforded all of the process that he was due.  Habeas relief is not warranted on this claim.

### D. Effectiveness of Trial Counsel

Lastly, Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the alleged trial and sentencing errors.  Am. Pet. at PageID.86. Respondent contends that this claim lacks merit.  Resp. at PageID.181.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained in relevant part:

> To prove counsel was ineffective, this Court relies on the test set out in <u>Strickland v. Washington</u>, 466 U.S. 668, 687; 104 S. Ct. 2052; 80 L. Ed. 2d 674 (1984).
>
>> First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [<u>People v. Armstrong</u>, 490 Mich. 281, 290; 806 N.W.2d 676 (2011) (citations omitted).]
>
> "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." <u>People v. Ericksen</u>, 288 Mich. App. 192, 201; 793 N.W.2d 120 (2010).
>
> **[…]**
>
> First, defendant argues that his counsel was ineffective for failing to object to the hearsay statements during trial. However, defense counsel did object to two of the statements as hearsay. Regarding the third statement, as previously discussed, the statement was not hearsay because it was not offered to prove the truth of the matter asserted. Therefore, counsel was not ineffective for making a futile objection. <u>Ericksen</u>, 288 Mich. App. at 201. Furthermore, any error in its admission was harmless.  <u>Armstrong</u>, 490 Mich. at 290
> .
> Next, defendant argues that his counsel was ineffective for failing to object to the

19

admission of the lab report. As discussed, the lab report was properly admitted pursuant to MCR 6.202(C), so defendant had no basis for objecting to its admission at trial. Ericksen, 288 Mich. App. at 201. As also discussed, even it had been error to admit the report, which it was not, any such error would have been harmless. Armstrong, 490 Mich. at 290. Although not argued, we recognize that trial counsel could have made a written objection to the report under MCR 6.202(C)(2). However, it is not apparent that trial counsel lacked a sound strategic reason for declining to object to the report. As noted, the nature of the substance was of little relevance to the theory of the defense. However, placing the laboratory technician on the stand would have drawn significantly more attention to the fact that the substance was meth, and thus would have taken attention away from the argument that the operation was an inept setup. See People v. Unger, 278 Mich. App. 210, 242; 749 N.W.2d 272 (2008) (noting that it is reasonable trial strategy to not object and draw attention to specific comments). Furthermore, because the substance had already been field-tested to be meth, and it appears there was no real doubt about the nature of the substance, the outcome of any testimony from the lab technician likely was a foregone conclusion. Defendant has neither overcome the presumption that trial counsel had a sound strategic basis for declining to object under MCR 6.202(C)(2), nor shown that any such objection would have been helpful to the defense.

Defendant finally argues that his counsel was ineffective for failing to object to the application of the sentencing enhancement or ensure that the trial court was aware that the enhancement was discretionary. Because it is apparent from the record that the trial court was aware that the sentence enhancement was discretionary and its application was within the court's discretion, counsel was not ineffective for failing to make a meritless objection. Ericksen, 288 Mich. App. at 201.

Emery, 2020 WL 7413590 at *4–5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair

trial or appeal.  Id.

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  Id. at 690. A reviewing court's scrutiny of counsel's performance is highly deferential.  Id. at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id. at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  Id. at 689.

To satisfy the prejudice prong under Strickland, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  Id.  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  Harrington, 562 U.S. at 105 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Given the Michigan Court of Appeals' decision, as well as this Court's determination that the underlying trial and sentencing claims lack merit or do not warrant relief, Petitioner cannot establish that trial counsel erred and/or that he was prejudiced by counsel's conduct in failing to object at trial or at sentencing. Counsel cannot be deemed ineffective for failing to make a futile or meritless argument. Tackett v. Trierweiler, 956 F.3d 358, 375 (6th Cir. 2020); Hoffner v. Bradshaw, 622 F.3d 487, 499 (6th Cir. 2010). Petitioner fails to establish that trial counsel was ineffective under the Strickland standard. Habeas relief is not warranted on this claim.

## IV. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court denies and dismisses with prejudice the amended petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability (COA) must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Petitioner makes no such showing as to his habeas claims. Accordingly, the Court denies a COA.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. See Fed. R. App. P. 24(a). Accordingly, the Court denies Petitioner leave to proceed in forma

pauperis on appeal.

**SO ORDERED.**

Dated: August 6, 2025                          s/Mark A. Goldsmith
Detroit, Michigan                              MARK A. GOLDSMITH
                                               United States District Judge

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 6, 2025.

                                               s/Joseph Heacox
                                               JOSEPH HEACOX
                                               Case Manager